Present:  All the Justices

CHARLES MCMILLION, ET AL.

v. Record No. 002802  OPINION BY JUSTICE CYNTHIA D. KINSER
                                        September 14, 2001
DRYVIT SYSTEMS, INC.

FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Marcus D. Williams, Judge

This appeal involves claims of false advertising and fraud arising out of an allegedly defective product known as "Exterior Insulation Finish System" (EIFS).  Because we conclude that the limitation period in Code § 8.01-248 applies to a cause of action for false advertising, we will affirm the circuit court's judgment sustaining a plea of the statute of limitations.  We will also affirm the court's judgment sustaining a demurrer to the fraud counts for two reasons.  In a pleading filed after the court sustained a demurrer, the plaintiffs did not re-plead fraud based on the defendant's failure to disclose known defects in its product to the public.  As to fraud based on the defendant's affirmative misrepresentations, the plaintiffs did not allege misrepresentations of existing facts.

I. FACTS AND MATERIAL PROCEEDINGS

The circuit court decided this case upon a plea of the statute of limitations and a demurrer without an evidentiary hearing.  Thus, we will summarize the facts as

alleged in the pleadings.  Eagles Court Condo. Unit Owners Ass'n v. Heatilator, Inc., 239 Va. 325, 327, 389 S.E.2d 304, 304 (1990).  In doing so, we consider the facts stated and all those reasonably and fairly implied in the light most favorable to the nonmoving parties, Charles McMillion and Suzanne McMillion.  Yuzefovsky v. St. John's Wood Apartments, 261 Va. 97, 102, 540 S.E.2d 134, 137 (2001).

The McMillions commenced building a house in 1993. During the construction, they contacted a contractor who was familiar with and installed a style of stucco exterior finish that the McMillions wished to use on their house. That contractor advised the McMillions that the finish about which they were inquiring was a synthetic stucco product known as EIFS.  The contractor then gave the McMillions some advertising brochures and other promotional materials issued by Dryvit Systems, Inc. (Dryvit), a manufacturer of EIFS.  Those brochures contained a variety of information and representations about the product and its characteristics.  The McMillions subsequently selected the EIFS manufactured by Dryvit for use on their home.  The house was completed in September 1993.

Five years later, in September 1998, the McMillions allowed a television news crew who was preparing a story about EIFS to inspect their home.  The inspection revealed

that water had become trapped behind the EIFS, causing rotting and deterioration of the house's structure, mold growth, and insect infestations. These problems were not visible on the exterior of the McMillions' house.

According to the McMillions' averments, EIFS is a defective product. EIFS is supposed to provide a waterproof exterior surface. However, some water allegedly intruded behind the exterior surface on the McMillions' house and could not drain out or evaporate because of the design of the EIFS. The McMillions contend that this trapped moisture permeated and damaged the porous structural elements of their home to the extent that the house could not be repaired without removing the EIFS, repairing the structural damage, and replacing the EIFS with an alternative exterior finish.

Because of the damage to their home, the McMillions filed an action against Dryvit and seven other defendants on September 22, 1998, seeking, among other damages, the costs of having their home repaired.[1] As pertinent to this appeal, the McMillions asserted against Dryvit, in both their first and second amended motions for judgment, claims

---

[1] The McMillions have not appealed any ruling of the circuit court with regard to these other defendants. Thus, we will not identify those defendants or address any issue concerning them.

of false advertising pursuant to Code §§ 59.1-68.3 and 18.2-216, and actual and constructive fraud.[2]  In the fraud counts, the McMillions alleged, among other things, that Dryvit knew or should have known of inherent defects in the EIFS and its incompatibility with certain other products; that Dryvit should have disclosed such defects to the McMillions; that, by failing to make such disclosures, Dryvit misrepresented material facts to the McMillions; and that they relied upon such misrepresentations to their detriment.  In response to the second amended motion for judgment, Dryvit filed a plea of the statute of limitations and a demurrer.

After considering the parties' briefs and hearing argument, the circuit court sustained the plea of the statute of limitations as to the count alleging false advertising.  The court determined that the limitation period prescribed in Code § 8.01-248 applies to a claim for false advertising.  The court also sustained the demurrer to the counts for actual and constructive fraud on the basis that the McMillions had failed to plead those counts with sufficient particularity, but granted leave to amend those claims.

_____

[2] The circuit court sustained Dryvit's demurrer to the first amended motion for judgment but granted the

4

Subsequently, the McMillions filed a third amended motion for judgment, asserting claims of actual and constructive fraud against Dryvit. In that pleading, they did not allege that Dryvit failed to disclose defects in its EIFS. Instead, the McMillions asserted only that Dryvit made certain affirmative, material misrepresentations about its product upon which the McMillions relied to their detriment.

As before, Dryvit filed a demurrer and a plea of the statute of limitations in response to the third amended motion for judgment. The circuit court sustained the demurrer and dismissed the action with prejudice as to Dryvit.

## II. ANALYSIS

The McMillions filed eight assignments of error. However, the following three questions are dispositive of this appeal: (1) whether the limitation period prescribed in Code § 8.01-248 applies to a claim for false advertising; (2) whether this Court can address the merits of the fraud counts based on Dryvit's alleged failure to disclose defects in its product; and (3) whether the McMillions pled misrepresentations of existing facts,

McMillions leave to amend.

5

rather than mere opinions as to future events, in their fraud counts based on affirmative misrepresentations.

### A. STATUTE OF LIMITATIONS FOR FALSE ADVERTISING

The McMillions claim that the circuit court erred in determining that the statute of limitations applicable to a cause of action for false advertising is the "catch-all" limitation period set forth in Code § 8.01-248, rather than the limitation period and accrual date for fraud found in Code §§ 8.01-243(A) and 8.01-249(1), respectively. Today, this Court holds in Parker-Smith v. Sto Corp., 262 Va. ___, ___, ___ S.E.2d ___, ___ (2001), that a cause of action for false advertising, brought pursuant to Code §§ 59.1-68.3 and 18.2-216, is subject to the limitation period prescribed in Code § 8.01-248.[3]  Thus, the circuit court did not err in sustaining Dryvit's plea of the statute of limitations with regard to the McMillions' claim for false advertising.[4]

### B. FRAUD BASED ON FAILURE TO DISCLOSE PRODUCT DEFECTS

---

[3] In 1993, the limitation period in Code § 8.01-248 was one year.  An amendment to that statute, effective July 1, 1995, enlarged the limitation period to two years.

[4] The McMillions do not raise any issue regarding the date on which their cause of action for false advertising accrued.  Therefore, we do not address that question in this appeal.

The McMillions argue that the circuit court erred as a matter of law in determining that a manufacturer with superior knowledge of inherent defects in its product and the reasonably foreseeable damage resulting from those defects has no duty to disclose such information to the consuming public.  Because the McMillions did not re-plead fraud based on a failure to disclose in the third amended motion for judgment, we cannot reach the merits of this issue.

In the second amended motion for judgment, the McMillions based their fraud counts on both Dryvit's failure to disclose and its affirmative misrepresentations. However, they did not include allegations concerning Dryvit's failure to disclose product defects in the third amended motion for judgment, nor were such allegations incorporated by reference to any prior pleadings.  Instead, the fraud counts in the third amended motion for judgment addressed only affirmative misrepresentations contained in Dryvit's advertising brochures.[5]

---

[5] In the second amended motion for judgment, the McMillions stated in Count VI, alleging actual fraud, and in Count VII, alleging constructive fraud, that "[b]y failing to disclose such inherent defects and incompatibility to [the] McMillion[s], [Dryvit] misrepresented material facts . . . ."  However, in those two counts in the third amended motion for judgment, the McMillions alleged only that Dryvit made representations

On brief, the McMillions state that the circuit court's order sustaining Dryvit's demurrer to the second amended motion for judgment did not specify which form of fraud the court was addressing, but that Dryvit and the McMillions understood that the court dismissed with prejudice the "failure to disclose" form of fraud and did not allow that kind of fraud to be re-pled in the third amended motion for judgment.  Dryvit took the same position in a memorandum that it filed in support of its demurrer to the third amended motion for judgment.  In that memorandum, Dryvit stated that the circuit court sustained with prejudice Dryvit's demurrer to the McMillions' allegations of fraud based on nondisclosure in the second amended motion for judgment and that the McMillions consequently deleted such allegations in their third amended motion for judgment.  A copy of one page from a transcript of a hearing held in the circuit court on October 26, 1999, which Dryvit attached to its memorandum, reflects that the

about EIFS that it knew or should have known were false, and that the McMillions relied upon those misrepresentations to their detriment.

In paragraph 30 of the third amended motion for judgment, the McMillions discussed Dryvit's failure to warn the public or the McMillions about the potential for water damage such as that sustained by the McMillions' house. Even though the fraud counts incorporated preceding counts and paragraphs in the third amended motion for judgment,

8

circuit court agreed with a suggestion by Dryvit's counsel that the McMillions be granted leave to file a third amended motion for judgment only with regard to affirmative misrepresentations allegedly made by Dryvit.[6]

However, despite what the parties may have understood to be the court's ruling, the circuit court's order sustaining Dryvit's demurrer to the second amended motion for judgment did not limit the kind of fraud that the McMillions could re-plead in the third amended motion for judgment.  The court specifically stated the following in its order:[7]

> Dryvit's demurrers to Counts VI and VII of the Plaintiffs' Second Amended Motion for Judgment, alleging Dryvit's actual and constructive fraud, are SUSTAINED, as plaintiffs failed to plead those counts with the required particularity. . . . Plaintiffs are granted leave to file amended claims for actual and constructive fraud.

This Court has said on numerous occasions that trial courts speak only through their written orders and that such orders are presumed to reflect accurately what transpired.  See, e.g., Waterfront Marine Constr., Inc. v.

---

the McMillions did not base those fraud counts on a failure to disclose defects to the public.

[6] The entire transcript from that hearing is not part of the record on appeal.

[7] In that order, the circuit court did not incorporate its remarks from the bench contained in the transcript page from the October 1999 hearing.

North End 49ers Sandbridge Bulkhead Groups A, B and C, 251 Va. 417, 427 n.2, 468 S.E.2d 894, 900 n.2 (1996); Stamper v. Commonwealth, 220 Va. 260, 280-81, 257 S.E.2d 808, 822 (1979).  Furthermore, in Delk v. Columbia/HCA Healthcare Corp., 259 Va. 125, 129, 523 S.E.2d 826, 829 (2000), this Court held that "[w]hen a circuit court sustains a demurrer to an amended pleading which is complete in itself and fails to incorporate by reference allegations in earlier pleadings, we will consider only the allegations contained in the amended pleading that was the subject of the demurrer sustained by the judgment appealed from."  See also Bell Atlantic-Virginia, Inc. v. Arlington County, 254 Va. 60, 63 n.2, 486 S.E.2d 297, 299 n.2 (1997); Norfolk & W. Ry. Co. v. Sutherland, 105 Va. 545, 549-50, 54 S.E. 465, 466 (1906).  Consequently, we consider only the allegations in the McMillions' third amended motion for judgment, which, as previously stated, did not include claims of actual or constructive fraud based on Dryvit's failure to disclose defects in its EIFS.  Therefore, we cannot address the merits of the question whether a manufacturer's failure to disclose known defects in its product to the public can form the basis of a claim for fraud.

C. FRAUD BASED ON AFFIRMATIVE MISREPRESENTATIONS

10

The McMillions' third question on appeal combines five assignments of error that collectively challenge the various possible grounds upon which the circuit court may have sustained Dryvit's demurrer to the claims for actual and constructive fraud in the third amended motion for judgment. Unfortunately, the circuit court did not articulate the basis for that decision but stated in its order only that Dryvit's demurrer to Counts VI and VII in the third amended motion for judgment, alleging actual and constructive fraud, was sustained. However, under the provisions of Code § 8.01-273, the circuit court could consider only those grounds specifically stated by the demurrant. Likewise, our consideration of the demurrer on appeal is limited to the grounds raised by Dryvit. See Chippenham Manor, Inc. v. Dervishian, 214 Va. 448, 451, 201 S.E.2d 794, 796 (1974). One of the grounds asserted by Dryvit in its demurrer to the third amended motion for judgment, which we find dispositive, was that the McMillions failed to allege "that Dryvit made false and material representations of pre-existing facts."[8]

On this issue, the McMillions argue that the circuit court erred as a matter of law by finding that the

---

[8] This ground is the subject of one of the assignments of error included in the third question.

11

fraudulent misrepresentations identified by the McMillions were mere unfulfilled promises as to future events.  On brief, they identify two alleged misrepresentations, asserted in the third amended motion for judgment, that were, according to the McMillions, "misrepresentations of current performance characteristics" upon which they relied and which directly caused the damages to their home.  Those alleged misrepresentations, which appeared in Dryvit's advertising brochure, are:[9]

> Damaging water penetration is avoided.  Rain finds its way into the wall structure when insulation is placed inside.  Conventional insulation absorbs water over a period of time and eventually becomes inefficient.  With Outsulation, there are not routes for water to enter. . . . The entire wall remains dry and insulation values stay constant; . . . Interior finishes remain stable.

> Allows necessary water vapor transmission which helps prevent condensation in the wall assembly.

We disagree with the McMillions' position that these alleged misrepresentations are statements of present facts.

" '[F]raud must relate to a present or a pre-existing fact, and cannot ordinarily be predicated on unfulfilled promises or statements as to future events.' "  Patrick v. Summers, 235 Va. 452, 454, 369 S.E.2d 162, 164

---

[9] The McMillions listed other alleged misrepresentations in the third amended motion for judgment but acknowledged on brief that those additional

(1988) (quoting <u>Soble v. Herman</u>, 175 Va. 489, 500, 9 S.E.2d 459, 464 (1940)). This Court stated in <u>Mortarino v. Consultant Eng'g Servs., Inc.</u>, 251 Va. 289, 293, 467 S.E.2d 778, 781 (1996)(citing <u>Saxby v. Southern Land Co.</u>, 109 Va. 196, 198, 63 S.E. 423, 424 (1909)), that

> [i]t is well settled that a misrepresentation, the falsity of which will afford ground for an action for damages, must be of an existing fact, and not the mere expression of an opinion. The mere expression of an opinion, however strong and positive the language may be, is no fraud. Such statements are not fraudulent in law, because . . .they do not ordinarily deceive or mislead. Statements which are vague and indefinite in their nature and terms, or are merely loose, conjectural or exaggerated, go for nothing, though they may not be true, for a [person] is not justified in placing reliance upon them.

"We have not, however, established a bright line test to ascertain whether false representations constitute matters of opinion or statements of fact." 251 Va. at 293, 467 S.E.2d at 781. Instead, "each case must in a large measure be adjudged upon its own facts, taking into consideration the nature of the representation and the meaning of the language used as applied to the subject matter and as interpreted by the surrounding circumstances." <u>Packard Norfolk, Inc. v. Miller</u>, 198 Va. 557, 562, 95 S.E.2d 207, 211 (1956).

---

misrepresentations did not directly cause the damages for which they sought relief.

In the present case, we hold that the alleged misrepresentations identified by the McMillions, when taken in context, see id., are merely statements of opinion about how Dryvit's EIFS would perform in the future if utilized in constructing a home.  See Lumbermen's Underwriting Alliance v. Dave's Cabinet, Inc., 258 Va. 377, 382, 520 S.E.2d 362, 365 (1999) (insurer's false representation that certain insurance policy would reduce insured's premiums was unfulfilled promise as to future event).  To illustrate the difference between a statement of opinion and one of existing fact, we point to another representation in Dryvit's advertising brochure.  On the same page of the brochure upon which the second alleged misrepresentation appeared, Dryvit stated that it uses only 100 percent acrylic polymer formula in its finish coating.  That statement, if false, would be a misrepresentation of existing fact because it pertains to the present quality or character of Dryvit's EIFS.  See Tate v. Colony House Builders, Inc., 257 Va. 78, 83-84, 508 S.E.2d 597, 600 (1999) (statement that house was free from structural defects was representation of present quality or character of property and, thus, statement of fact; whereas, statement that no significant work would be required by way of restoration or repair was representation predicated upon

14

future events, and could not form basis of action for fraud); <u>Mortarino</u>, 251 Va. at 294, 467 S.E.2d at 781 (statement that wetlands were not present on tract of real estate was representation of fact regarding property's present quality and character).  Thus, for this reason alone, the circuit court did not err in sustaining Dryvit's demurrer to the McMillions' claims for actual and constructive fraud based on affirmative misrepresentations.[10]

CONCLUSION

For the reasons stated, we will affirm the judgment of the circuit court.

<u>Affirmed</u>.

---

[10] In light of our decision, we do not need to address any other assignments of error encompassed in the third question.  Nor do we reach the fourth question on appeal, whether an allegation of fraud in the inducement of a contract is an attempt to convert a contract action into one based on tort.